UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHIRLEY LACY,

        Plaintiff,

v.

K. L. VILLENEUVE,

        Defendant.

CASE NO. C03-2442JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on Defendant's motion for summary judgment (Dkt. # 86). Although Plaintiff has requested oral argument, the court finds this matter appropriate for disposition on the basis of the parties' briefing and supporting declarations. For the reasons stated below, the court DENIES Defendant's motion.

## II. BACKGROUND

This action centers on the June 11, 2002 encounter of Defendant K.L. Villeneuve, a trooper for the Washington State Patrol ("WSP"), and Plaintiff Shirley Lacy, on a freeway on-ramp near downtown Seattle. No one contests that Ms. Lacy was driving to work between 8:30 a.m. and 9:00 a.m., and that Trooper Villeneuve pulled Ms. Lacy over when she drove onto the on-ramp. No one contests that Trooper Villeneuve searched Ms. Lacy's vehicle. No one contests that Trooper Villeneuve ultimately arrested Ms. Lacy, transported her to a local hospital for a blood draw, and released her

ORDER – 1

later that day when the blood draw revealed no evidence of intoxication or drug use. Virtually everything that occurred between the traffic stop and Ms. Lacy's release is disputed. The court reserves a discussion of those disputes for its later analysis.

Plaintiff brought this action under 42 U.S.C. § 1983 claiming that Trooper Villeneuve violated her Fourth Amendment rights by stopping her without reasonable suspicion that a traffic violation had occurred and arresting her without probable cause. She also claims that Trooper Villeneuve violated her Fourteenth Amendment right to equal protection because Ms. Lacy's race was a motivating factor in her decision to pull her over, search her vehicle, and arrest her. Defendant claims that Ms. Lacy has insufficient evidence that any constitutional violation occurred, and that even if one did, Trooper Villeneuve is entitled to qualified immunity.

### III.  ANALYSIS

In resolving this motion for summary judgment, the court must draw all inferences from the admissible evidence in the light most favorable to the non-moving party. Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When the moving party meets its burden, the opposing party must show that there is a genuine issue of fact for trial. Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The opposing party must present significant and probative evidence to support its claim or defense. Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). For purely legal questions, summary judgment is appropriate without deference to the non-moving party.

Defendant raises a qualified immunity defense to each of Ms. Lacy's claims under 42 U.S.C. § 1983. Section 1983 creates a remedy for an individual who suffers a violation of her rights under the Constitution or other laws at the hands of a person acting under the color of state law. Qualified immunity provides a defense in a § 1983 action

where a reasonable person in the defendant's shoes could have mistakenly believed that the law did not prohibit his conduct. Saucier v. Katz, 533 U.S. 194, 205 (2001). The qualified immunity doctrine focuses on reasonable legal mistakes, not factual mistakes. Id. In some contexts, a reasonable mistake as to underlying facts will insulate a defendant from liability, but this is a separate inquiry from qualified immunity. Id. (noting that reasonable, but mistaken, factual judgments can justify the use of force under the Fourth Amendment).

Since the Supreme Court decided Saucier, the Ninth Circuit has developed a two-step inquiry for addressing qualified immunity. A court must first determine if the evidence taken in the light most favorable to the plaintiff shows that a constitutional violation occurred. Kennedy v. City of Ridgefield, 411 F.3d 1134, 1141 (9th Cir. 2005). If a violation occurred, then the court must turn to the second step, which focuses on whether the law underlying the constitutional violation was "clearly established." Id. In this step, the court decides if the officer made a reasonable mistake about what the law requires. Id. at 1142. The court now applies this two-step analysis to each constitutional violation that Ms. Lacy alleges.

**A.   The Traffic Stop**

Under clearly established law, Trooper Villeneuve could stop Ms. Lacy in her vehicle if she had a reasonable suspicion that she had committed a traffic violation. Bingham v. City of Manhattan Beach, 341 F.3d 939, 946 (9th Cir. 2003).[1] Trooper Villeneuve asserts that she had reasonable suspicion that Ms. Lacy was unlawfully

---

[1] Reasonable suspicion of a traffic violation is sufficient cause for a traffic stop even if the officer conducting the stop has a racial motivation. United States v. Wallace, 213 F.3d 1216, 1219 (9th Cir. 2000) (citing Whren v. United States, 517 U.S. 806, 810, 813 (1996)). Plaintiff's efforts to inject race into the court's Fourth Amendment analysis are unavailing. Her reliance on United States v. Montero-Camargo, 208 F.3d 1122 (9th Cir. 2000), is misplaced. In that case, the Ninth Circuit merely held that it was improper to use the race of a vehicle occupant as a basis for reasonable suspicion. Id. at 1135.

ORDER – 3

1  driving in the left lane of the on-ramp, which was a High Occupancy Vehicle ("HOV")
2  lane. Villeneuve Aff. at ¶¶ 2-5; Villeneuve Dep. at 73. Ms. Lacy agrees that she was
3  driving alone and not permitted in the HOV lane, but declares that she changed lanes into
4  the right lane of the on-ramp before the HOV lane began. Lacy Dep. at 9. The court
5  cannot resolve these factual disputes on summary judgment. Taking the evidence in the
6  light most favorable to Ms. Lacy, a jury could conclude that Trooper Villeneuve violated
7  the Fourth Amendment because she had no evidence supporting a reasonable suspicion
8  that Ms. Lacy committed a traffic violation.

9  Trooper Villeneuve does not satisfy the second step of the court's qualified
10 immunity analysis regarding the traffic stop. As noted above, the Fourth Amendment
11 law governing Trooper Villeneuve's ability to stop Ms. Lacy's vehicle was clearly
12 established. Defendant attempts to shift the focus by suggesting that Trooper
13 Villeneuve may have been mistaken about Washington HOV law. Def.'s Reply at 4
14 (responding to Ms. Lacy's claim "that she exited the HOV lane while the line was
15 dotted" with: "Even if Trooper Villeneuve was incorrect about whether a motorist's
16 travel in that portion of the HOV lane was illegal . . . ."). Trooper Villeneuve, however,
17 made clear that this was not her understanding of the law:

18  Q: Okay. When a car is driving in an area where the dotted white line is, are they violating the HOV lane?
19
20  A: I wouldn't write them a ticket until they are actually inside the solid white.

21 Villeneuve Dep. at 72-73. Trooper Villeneuve does not allege that she was mistaken
22 about the law.[2] She alleges that she saw Ms. Lacy in the portion of the HOV lane

---

[2] While the Fourth Amendment law surrounding this stop was clearly established, Washington law regarding HOV lanes is not. Although no one disputes that it is unlawful to drive in an HOV lane (see RCW §§ 46.61.165, 47.52.025), neither party cites law that establishes where an HOV lane begins. For purposes of this motion, the court assumes that it is lawful for a solo driver to drive in an HOV lane until the lane is separated from other lanes by a solid line, consistent with Trooper Villeneuve's understanding of the law.

ORDER – 4

1  demarcated by a solid white line, and thus properly stopped her for a traffic violation. If,
2  as Ms. Lacy contends, she never entered HOV lane,[3] no reasonable law enforcement
3  officer in Trooper Villeneuve's position would have believed that the law permitted a
4  traffic stop. For that reason, summary judgment on qualified immunity is inappropriate.

**B.   The Arrest**

A similar analysis applies to Trooper Villeneuve's decision to arrest Ms. Lacy. The parties concede that clearly established law permitted the arrest as long as Defendant had probable cause to believe Ms. Lacy had committed an offense for which arrest is an option. Defendant Villeneuve arrested Ms. Lacy because she believed she had been driving while under the influence of drugs. To support her allegation of probable cause, she offers her own observations of Ms. Lacy's erratic behavior as well as the observations of two WSP troopers who arrived at the on-ramp to assist her. She contends that the discovery of a razor blade with residue on it along with small "rocks" or particles in the seat console of Ms. Lacy's vehicle supported her suspicion of drug use. She also contends that Ms. Lacy performed unsatisfactorily on several field sobriety tests.

Ms. Lacy disputes these facts. She claims that she may have acted impatiently or nervously, but not erratically. She asserts that the "rocks" that Trooper Villeneuve discovered in her vehicle were clearly food particles. She says that she offered a reasonable explanation for the presence of the razor blade. She contends that her performance on the field sobriety tests did not indicate that she was under the influence of any drug.

---

[3]Although the evidence before the court is unclear, it is possible that from Trooper Villeneuve's vantage point, she made a reasonable factual mistake about whether Ms. Lacy's vehicle was in the HOV lane. The court cannot resolve this disputed factual issue on summary judgment. The court assumes for purposes of this motion that Trooper Villeneuve could see where the HOV lane began and ended from her vantage point. She is free to argue otherwise to the jury.

ORDER – 5

1     Ms. Lacy has produced sufficient evidence of a constitutional violation to survive
2 summary judgment. Resolving the parties' dramatically different accounts of what
3 occurred on the on-ramp is a jury's task. A jury could find that Trooper Villeneuve could
4 not have reasonably believed that Ms. Lacy was under the influence, and that she had no
5 basis to arrest her.[4] The court must therefore proceed to the second step of the qualified
6 immunity test.

7     As already noted, the law regarding probable cause is well settled. There is no
8 suggestion here that Trooper Villeneuve improperly applied the law. Her only defense is
9 that she reasonably determined that Ms. Lacy was under the influence. This is a factual
10 assessment, not a legal one, and thus it plays no role in the second step of the qualified
11 immunity analysis. Summary judgment on qualified immunity is therefore inappropriate.

12 **C.  Racial Profiling**

13     Ms. Lacy's final constitutional claim is that Trooper Villeneuve discriminated
14 against her on the basis of her race in her treatment of her on July 11. Although the term
15 "racial profiling" is often used to describe this practice, it is important to note that the
16 term has been used to describe at least two types of constitutional violations. First, when
17 an officer uses race explicitly as a component of his or her reasonable suspicion or
18 probable cause evaluation, this "racial profiling" can constitute a Fourth Amendment
19 violation. For example, in <u>Washington v. Lambert</u>, 98 F.3d 1181 (9th Cir. 1996), the
20 court found a Fourth Amendment violation where the police detained two men in large

---

[4]The court notes that after Trooper Villeneuve arrested Ms. Lacy, she transported her to a WSP field office in Seattle where Trooper Samantha Pratt, a "drug recognition expert," evaluated her. Trooper Pratt arrived at the conclusion that Ms. Lacy was "under the influence of [central nervous system] Stimulants," but not "impaired at the time of [the] evaluation." Drug Influence Evaluation Narrative at ¶ 11. Part of the basis for her conclusion was information that Trooper Villeneuve supplied about the circumstances of the arrest. Pratt Dep. at 136. Only after Ms. Pratt's evaluation and a trip to a hospital for blood tests did Trooper Villeneuve determine that Ms. Lacy was not under the influence and release her. None of these facts have any bearing on Trooper Villeneuve's decision to arrest Ms. Lacy, although they may bear on whether she unjustifiably prolonged her detention.

ORDER – 6

1  part because their race was the same as the race of the perpetrators of robberies they were
2  investigating. Id. at 1190-91. Similarly, in United States v. Montero-Camargo, 208 F.3d
3  1122, 1131 (9th Cir. 2000), the court held that it was error to rely on the race of a
4  vehicle's driver as part of the basis for reasonable suspicion. See supra n.1.

5  In cases where an officer has probable cause or reasonable suspicion independent
6  of the race of the person he or she detains, the officer's racial motivation does not
7  constitute a Fourth Amendment violation. United States v. Wallace, 213 F.3d 1216, 1219
8  (9th Cir. 2000); see also Moreno v. Baca, 400 F.3d 1152, 1166 (9th Cir. 2005). In such
9  cases, a person alleging "racial profiling" must turn instead to the equal protection clause
10 of the Fourteenth Amendment, under which he or she must prove that the officer "acted
11 in a discriminatory manner and that the discrimination was intentional." Bingham v. City
12 of Manhattan Beach, 341 F.3d 939, 948 (9th Cir. 2003) (quoting Reese v. Jefferson Sch.
13 Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000)). Discrimination need not be the sole
14 motivation for the conduct, as long as it is a "motivating factor." Vill. of Arlington
15 Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 266 (1977).

16 Ms. Lacy's "racial profiling" claim is exclusively a Fourteenth Amendment claim.
17 Trooper Villeneuve did not rely on Ms. Lacy's race as part of the reasonable suspicion
18 that led to stopping her vehicle. Thus, to show a constitutional violation and satisfy the
19 first prong of the qualified immunity analysis, Ms. Lacy must show that Trooper
20 Villeneuve acted in an intentionally discriminatory manner.

21 Ms. Lacy has produced sufficient evidence of an equal protection violation. She
22 has produced evidence from an expert witness who examined comprehensive data of all
23 WSP arrests. The expert concludes that the data "strongly support" the conclusion that
24 Trooper Villeneuve intentionally targets individuals for traffic stops based on race.
25 Defendant has produced a contrary declaration from her own expert, but the court cannot
26 choose between competing expert declarations on summary judgment.

27 Even if the court were to ignore the statistical evidence, Ms. Lacy points to other
28 evidence probative of race discrimination. Trooper Villeneuve decided that beige

ORDER – 7

particles she discovered in Ms. Lacy's vehicle were "rocks" despite inconclusive field tests.[5] As Ms. Lacy correctly points out, "rocks" are a term for pieces of crack cocaine, a drug disproportionately associated with African Americans. A jury could reasonably infer that Trooper Villeneuve's assumptions about the particles are evidence of racial discrimination. See Marshall v. Columbia Lea Regional Hosp., 345 F.3d 1157, 1169 (10th Cir. 2003) (noting that an officer's unsupported assumption that a detainee was under the influence of crack, rather than another drug, was evidence of racial discrimination). Taking the evidence in the light most favorable to Ms. Lacy, a jury could conclude that race was a motivating factor in Trooper Villeneuve's decisions to stop Ms. Lacy, or to arrest her, or to prolong her arrest.

As to the second step in the qualified immunity analysis, Trooper Villeneuve does not argue that Ms. Lacy's right to be free from racial discrimination was not clearly established. She also does not argue that she could have reasonably believed that she could target Ms. Lacy because of her race. Trooper Villeneuve has thus not established her right to qualified immunity.

## IV.  CONCLUSION

For the foregoing reasons, the court DENIES Defendant's motion for summary judgment (Dkt. # 86).

Dated this 21st day of November, 2005.

s/James L. Robart
_____
JAMES L. ROBART
United States District Judge

---

[5] Although Trooper Villeneuve seized the "rocks" for further testing, there is no evidence in the record of the test results. Ms. Lacy insists that the "rocks" were most likely crumbs from her children's cereal. A reasonable jury might well assume that no reasonable WSP trooper would confuse breakfast food for crack cocaine absent race-based assumptions. The court assumes that many more motorists who WSP troopers stop have food crumbs in their vehicles than have particles of crack cocaine.

ORDER – 8